IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CR-00369-M

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TRAVIS LAMAR SMITH, <br><br> Defendant. | ORDER |

This matter comes before the court on Defendant's motion seeking (1) modification of his detention order and (2) pretrial release under certain conditions [DE 19]. Defendant seeks this court's de novo review of a detention order issued by the Honorable Brian S. Meyers on December 21, 2023. DE 16; *see also* DE 18 (written order of detention). The court set a hearing on the motion, DE 20, which occurred on January 11, 2024, DE 21.[1] For the reasons stated herein, the motion is DENIED, and the court finds by a preponderance of evidence that no condition or combination of conditions would reasonably assure Defendant's appearance if he were released. *See* 18 U.S.C. § 3142(e)(1).[2] This order memorializes the court's ruling from the bench. *See* 18 U.S.C. § 3142(i)(1).[3]

---

[1] At that hearing, the parties presented witness testimony and argument, which the court considered for purposes of this order. The court also reviewed and considered the audio recording from Defendant's prior detention hearing before Judge Meyers, including all evidence submitted or proffered during that hearing.

[2] "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001)

[3] To the extent not expressly included in this order, the court further incorporates by reference its oral findings of fact and conclusions of law from the hearing.

1

## I. Legal Standards

A defendant ordered detained by a United States Magistrate Judge may, by motion, seek amendment or revocation of his detention order. 18 U.S.C. § 3145(b). On such a motion, the court conducts a de novo review of detention. *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1985). In that regard, the court "must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48.

"The Bail Reform Act of 1984 provides a federal court with two choices when dealing with a criminal defendant who has been charged with an offense and is awaiting trial." *Reno v. Koray*, 515 U.S. 50, 57 (1995) (internal quotation marks omitted). "The court may either (1) release the defendant on bail or (2) order him detained without bail." *Id.* (internal quotation marks omitted). The court must detain a defendant if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1).

Certain offenses provide a statutory presumption of detention, including any "offense involving a minor victim under section . . . 2251." 18 U.S.C. § 3142(e)(3)(E); *see also* DE 1 at 1 (charging Defendant with such an offense). Where a defendant rebuts that statutory presumption, "the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *Stewart*, 19 F. App'x at 48; *accord United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Even after that rebuttal, though, the presumption "remains a factor to be considered among those weighed by the district court." *United States v. Jaramillo*, No. 1:10-CR-426-2, 2010 WL 11504275, at *2 (M.D.N.C. Dec. 17, 2010) (collecting cases). Other factors that the court must consider include "the nature and circumstances of the offense charged," including whether the offense "involves a minor victim," "the weight of the evidence," "the history

2

and characteristics of the [defendant]," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1) – (4).

## II. Analysis

The court finds (as announced at the hearing) that Defendant rebutted the statutory presumption of detention by proffering a third-party custodian to monitor his release. The burden therefore shifted to the United States. The United States met its burden (by a preponderance of the evidence) in showing that no condition or combination of conditions would reasonably assure Defendant's appearance by first presenting the testimony of Federal Bureau of Investigation ("FBI") Agent Anthony Patrick. Agent Patrick's testimony[4] indicated that:

During the relevant time period, Defendant was 34 years old, and married. He is a Navy veteran, and was working at a fire station in Linden, North Carolina, near Fort Liberty. In the fall of 2020, a 16-year-old minor female (MF) began an internship at the fire station. MF and her family live in or near Linden as well. Defendant assumed a quasi-mentorship role over MF during her internship.

In that regard, Defendant and MF developed a relationship that MF thought was a friendly and professional relationship. They first exchanged telephone numbers, then social media accounts. Over time, however, Defendant pushed the relationship in a romantic direction. All the while, he told her to keep their relationship secret.

At first, Defendant would ask MF to send him (non-explicit) photos of her, indicating that it made him happy to look at them. Defendant then began to ask MF whether she wanted to have sexual intercourse before marriage. MF indicated that she did not, but Defendant continued to ask her; MF interpreted these repeated questions as Defendant implying that she should do so.

---

[4] As noted, the court also considered Agent Patrick's testimony from the prior detention hearing before Judge Meyers.

3

Case 5:23-cr-00369-M-RJ    Document 22    Filed 01/12/24    Page 3 of 8

Eventually, in the spring of 2021, Defendant and MF began engaging in sexual activity. MF was still 16 at the time. This activity continued until the summer of 2022, and often took place in hidden locations, such as behind buildings, or in Defendant's truck.

Defendant also reportedly collected a significant number of explicit images of MF. Some of these images were photos MF would send to him (at his request), but others were screenshots that Defendant took from FaceTime or other video-chatting programs and which showed MF engaging in sexual activity. Defendant and MF also made (what is colloquially referred to as) a sex tape in December 2021 (as reflected in Count One of the Indictment).

MF attempted to end her relationship with Defendant at least once. When she tried to do so, Defendant threatened to kill himself. Based on those threats, MF felt pressured to continue her relationship with Defendant.

In 2022, the FBI received a report about Defendant, which indicated that Defendant was in a sexual relationship with MF and had explicit images and videos of her on his phone. Based on that report, the FBI conducted an interview with MF. MF provided much of the information contained in this factual summary, and much of what she reported was corroborated when the FBI executed search warrants on Defendant, discussed below.

On September 7, 2022, the FBI executed a search warrant on Defendant's person and vehicle. From Defendant's iPhone, they were able to recover several sexually explicit images of MF, including some that appeared to be screenshots from FaceTime or other video-chatting programs, given that Defendant was also visible in a small frame in the corner of the images. Some of these images had previously been deleted by Defendant, but the FBI was able to recover them. The FBI also recovered a video from Defendant's wife's phone, which captured the sex tape of Defendant and MF.

4

The FBI also discovered that Defendant had used a "vault" application on his phone to store these images and video, one that would apparently conceal the contents of the application and was only accessible to him. Given MF's report that Defendant possessed a significant number of images of her, and that the FBI only recovered several, Agent Patrick opined (based on his experience and training) that Defendant likely attempted to conceal his relationship with MF by deleting many of the images.

Text messages recovered from Defendant's phone corroborated other material facts. For example, Defendant's threats of suicide were recovered. In addition, the FBI found texts from Defendant demonstrating that he knew of MF's age and knew his possession of explicit media was illegal.

The FBI conducted an interview with Defendant while executing the warrants. Defendant admitted he knew MF, and that she was a minor, but initially denied having a sexual relationship with her. When confronted with evidence of their relationship, he admitted as such. Defendant also stated that he deleted the sex tape with MF.

After Agent Patrick's testimony, MF gave a victim impact statement at the detention hearing and advocated for pretrial detention. She recounted how Defendant manipulated and brainwashed her, and the trauma that has resulted. She noted that her family lives in close proximity to where Defendant worked prior to his arrest. She said she has seen him on one occasion, and that the experience caused a panic attack. The court notes, though, that after execution of the federal search warrant in September 2022, and Defendant's arrest on the instant indictment in December 2023, there is no evidence of contact between Defendant and MF other than this one inadvertent interaction. Further, MF now attends college in Raleigh, North Carolina, and no longer resides in Linden full-time.

5

The United States also argued from pretrial detention based on Defendant's criminal record. Specifically, Defendant has a prior conviction for failure to appear in a Virginia state court. In addition, Defendant was cited for two misdemeanor hunting violations in North Carolina in early 2023. He also failed to appear for that offense, and his counsel represented that there is an active warrant for his arrest on those charges.

Based on the foregoing, the court cannot conclude by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In reaching that conclusion, the court has considered the nature and circumstances of the offense, which is serious, as well as the weight of the evidence against Defendant, which is quite strong. 18 U.S.C. § 3142(g)(1) & (2). Notwithstanding the seriousness of the offense and the strength of the evidence, the court notes that there is no evidence that Defendant has engaged in other similar conduct, that he attempted to disseminate any explicit media he collected, or that tried to contact MF after execution of the federal warrants 15 months before his arrest. *See* 18 U.S.C. § 3142(g)(3). Given that MF no longer resides in Linden (where Defendant's proffered third-party custodian resides), there are available conditions of release that could address Defendant's risk to the community.

However, the court does find, by a preponderance of the evidence, "that no condition or combination of conditions will reasonably assure the appearance of [Defendant] as required." 18 U.S.C. § 3142(e)(1). Defendant's prior conviction for a failure to appear gives the court significant concern in this regard. Further, Defendant more recently failed to appear to face state misdemeanor charges, even after he knew he was under federal investigation. Given the significant sentencing exposure Defendant faces on the instant indictment, his repeated failure to participate in the criminal process provides strong evidence that he may seek to absent himself to evade these

6

proceedings. Courts in the Fourth Circuit have routinely found that a defendant's history of failing to appear, coupled with the prospect of a significant prison sentence, supports pretrial detention based on the risk of nonappearance. *See, e.g., United States v. Sy*, No. 1:17-CR-82, 2017 WL 3537399, at *2 (E.D. Va. Aug. 17, 2017); *United States v. Tarr*, No. 3:17-CR-00121, 2017 WL 2979684, at *3 (W.D.N.C. July 12, 2017); *United States v. Soliman*, No. 4:13-CR-13-4, 2013 WL 1718767, at *1 (E.D. Va. Apr. 19, 2013); *United States v. Torres*, No. 5:11-CR-97-1, 2011 WL 1691828, at *2 (E.D.N.C. Apr. 28, 2011); *United States v. McNair*, No. 5:11-CR-89, 2011 WL 1541288, at *1 (E.D.N.C. Apr. 21, 2011). Finally, the evidence presented at the detention hearing reflects that Defendant engaged in generally obstructive conduct during the instant offense, including (1) directing MF to conceal their relationship from others, (2) storing explicit images of MF on a "vault" application on his phone, (3) attempting to delete the explicit images to further conceal their relationship, and (4) initially denying the relationship when interviewed by the FBI. Altogether, and even with a diligent third-party custodian, no condition or combination of conditions would reasonably assure Defendant's appearance.

### III. Conclusion

Given this finding, the motion is DENIED, and Defendant is ordered detained pending trial. Pursuant to 18 U.S.C. § 3142(i)(2) – (4), Defendant is hereby committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.

7

Case 5:23-cr-00369-M-RJ   Document 22   Filed 01/12/24   Page 7 of 8

On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED this 12th day of January, 2024.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

8